IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:14-667-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| SHAUN CONARD BROWN | ) | |
| | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A). Seeking compassionate release, the defendant states that he suffers from breathing difficulty, headaches, and vertigo. He contends that these conditions, coupled with the threat posed by COVID-19, constitute extraordinary and compelling reasons for his immediate release. In a later filed memorandum, the defendant also argues that he should benefit from the decision in *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019).

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

> is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden

to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on

their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

Here, the government does not contest the fact that the defendant has exhausted his administrative remedies. Thus, the court will proceed to review the matter on the merits.

DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus.

*See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Motion for Compassionate Release*

According to his medical records, the defendant tested positive for COVID-19 in July 2020 and recovered in August 2020. The medical records indicated that the defendant was asymptomatic, and he denied having a sore throat, chills, chest pain, shortness of breath, loss of taste, fatigue, or fever.

The conditions that the defendant complains about in his February 2021 motion (breathing difficulty, headaches, and vertigo) are not listed on the conditions identified by the CDC as increasing a person's risk for developing serious illness from COVID-19.

In regard to the defendant's medical condition, the government suggests that none of the medical records in the defendant's BOP file support his contention that he suffers from the three medical conditions listed above. Upon receiving this argument, this court requested and received all of the defendant's pertinent medical records from the BOP. Consistent with the government's assertion in its brief, these medical records contain no support whatsoever for the three medical conditions claimed by the defendant. Moreover, the court would note that in the defendant's Presentence Report (PSR) (ECF No. 612) prepared in mid-2015, Paragraph 56 indicates that "the defendant is in good health. He is not under the care of a physician nor is he taking any prescribed medication."

This leaves the defendant with the COVID-19 pandemic as his only avenue for compassionate release. On this record, the court must deny the defendant's motion.

Accordingly, this court concludes that based on his medical condition, the defendant has not demonstrated an extraordinary and compelling reason for his release.

Moreover, and perhaps more importantly, even if the defendant had demonstrated an extraordinary and compelling reason for his release, the court would nevertheless be compelled to decline the request after a review of the defendant's individualized sentencing factors, his post-sentencing conduct, and all of the surrounding circumstances in this case. In support of this conclusion, the court will address the § 3553(a) factors in turn:

*Factors Under § 3553(a)*

1. *Nature and Circumstances of the Offense*. The defendant was identified as a participant in a drug trafficking conspiracy involved in the acquisition and distribution of multi-ounce to multi-kilogram quantities of cocaine and crack cocaine throughout the Midlands area of South Carolina. Through the use of intercepted wiretap communications and information provided by cooperating witnesses, the defendant was determined to have obtained quantities of cocaine and crack cocaine from Devin Dennis, which he, in turn, distributed to others in the Columbia area of South Carolina. Evidence obtained from the intercepted wiretap communications further showed the defendant possessed firearms during the course of his drug activities and acted as a middle-man for transactions of MDMA, or "Molly," between Dennis and unidentified customers. Additionally, Dennis provided

corroborating information confirming the defendant's possession of weapons and affirming he supplied other co-defendants with cocaine which they then converted to crack cocaine for distribution.

The defendant is one of 20 defendants named in a Superseding Indictment filed in the District of South Carolina on November 20, 2014. The defendant was named in the following Counts:

Count 1: Conspiracy to knowingly, intentionally, and unlawfully possess with intent to distribute and distribution of cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1); and

Count 2: Conspiracy to conduct financial transactions involving the proceeds of specified unlawful activity, that is, buying, selling and otherwise dealing in narcotic controlled substances including cocaine and cocaine base, in violation of 18 U.S.C. § 1956(a0(1)(A)(i).

(ECF No. 324).

Pursuant to a written Plea Agreement (ECF No. 459), the defendant pleaded guilty to Count 1. He stipulated therein that he had at least two prior felony drug convictions that had become final and subjected him to enhanced penalties pursuant to 21 U.S.C. § 851.[2] The defendant and government also stipulated that if the defendant cooperated and complied with

[2] Conviction on April 21, 2005; Possession of Cocaine, 1st Offense; Richland County, Columbia, South Carolina; General Sessions Court; Case #05-GS-40-0303; Sentenced to 2 years and $100.00 fine and payment of $100.00 suspended with probation for 2 years; Arrest date: December 7, 2004; 2) Conviction on July 27, 2006; Possession of Controlled Substance, 1st Offense; Richland County, Columbia, South Carolina; General Sessions Court; Case #06-GS-40-4414; Sentenced to 9 months; Arrest date: May 26, 20061; and 3) Conviction on March 22, 2011; Possession with Intent to Distribute Cocaine, 1st Offense and Trafficking Cocaine, 1st Offense; Richland County, Columbia, South Carolina; General Sessions Court; Case #10-GS-40-11313 and #10-GS-40-11314; Sentenced to 3 years, concurrent; Arrest date: November 13, 2009.

the provisions of the Plea Agreement, the government would withdraw at sentencing the appropriate number of convictions in the § 851 Information (ECF No. 261) so that the defendant's new statutory sentencing range would be a mandatory minimum term of imprisonment of 20 years and a maximum term of life.

The PSR indicated that the defendant's total offense level was 29 and his criminal history category was IV, which resulted in a new Guidelines range of 20 years to Life.

The defendant was held accountable for 514 grams of cocaine and 454 grams of crack cocaine for the guideline sentencing purposes. The marijuana conversion equivalent was 1,724.04 kilograms of marijuana for the purpose of establishing his base offense level.

At the sentencing hearing on July 15, 2015, the court adopted the PSR with no objections and the government withdrew one of the § 851 enhancements. The court sentenced the defendant to a term of imprisonment of 240 months and term of supervised release of 10 years.

The defendant did not file an appeal of his sentence and conviction. He did file a motion to vacate or correct his sentence pursuant to 28 U.S.C. § 2255 which this court denied on the merits (ECF No. 1253).

The defendant has received credit for time served since October 23, 2014. His projected release date is November 19, 2031. He is housed at Federal Correctional Institution Jesup.

2. *History and Characteristics of the Defendant*. The defendant is currently 43 years of age. His criminal history and personal data are set out in more detail in the PSR. The defendant is single, having never married, and he has 2 children.

The defendant left high school in South Carolina in the 10th grade. He has prior work experience as a painter and day laborer.

*Post Sentencing Conduct*

During the 90 or so months the defendant has been incarcerated, he has had three disciplinary infractions on his record in 2020 for possessing an unauthorized item (305), refusing to obey an order (307), and smoking in an unauthorized area (332).

Commendably, the defendant has taken 20 vocational/educational courses while incarcerated including exercise and wellness classes, and culinary arts. He is also enrolled in classes to complete his GED. He states that he works in the food service area from 4:30 p.m. to 1:00 a.m.

The defendant states that if released he will live with family members in Columbia, South Carolina where he will go to school to obtain his Commercial Drivers License. Alternatively, he may enter the culinary field.

3. *Seriousness of the Crimes*. As evidenced by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence. Suffice it to say that this court considers the defendant's crime to be substantial.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release.

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

In sum, the § 3553(a) factors discussed above strongly militate against a sentence reduction at this time. As evidenced by this court's lengthy term of imprisonment,

*Other Arguments*

The defendant's secondary argument relying upon the decision in *United States v. Norman,* 395 F.3d 232 (4th Cir. 2019) is equally unavailing. *Norman* dealt with a defendant sentenced as a career offender under the Guidelines. The defendant in this case was not

sentenced as a career offender.

## CONCLUSION

For the foregoing reasons, the court determines that the defendant has not demonstrated an extraordinary and compelling reason for release due to his medical conditions. Even if he had, the defendant's release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. Moreover, the defendant has served only 7 years of his 20-year sentence. The motion (ECF No. 1414) is respectfully denied.[3]

IT IS SO ORDERED.

May 6, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

[3] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")